UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 15-10182-RWZ

UNITED STATES OF AMERICA

v.

LUIS GUZMAN-ORTIZ

MEMORANDUM OF DECISION & ORDER

March 14, 2019

ZOBEL, S.D.J.

On June 19, 2018, a jury convicted defendant of conspiring with Oristel Soto-Peguero to distribute and possess with intent to distribute heroin, Count 6 of the Superseding Indictment[1] (Docket # 82). See 21 U.S.C. § 846. The jury failed to reach a verdict on Count 4 that charged the substantive offense, possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1). See Docket # 240. Now before me is defendant's renewed motion for judgment of acquittal (Docket # 241).

I.  Factual Background

The court reviews the evidence presented at trial, including all reasonable inferences which may be drawn therefrom, in the light most favorable to the government. See United States v. Hyson, 721 F.2d 856, 860 (1st Cir. 1983). This

---

[1] In a separate trial Soto-Peguero was found guilty on two counts of possession with intent to distribute heroin (Counts 2 and 3), one count of conspiracy with Mercedes J. Cabral to distribute (Count 5), and one count of use of a firearm in relation to the substantive drug offense (Count 8). The jury found him not guilty of conspiracy to distribute with Guzman-Ortiz (Count 6), the same count on which Guzman-Ortiz was later convicted.

evidence pertains almost entirely to events that occurred in the afternoon and evening of July 6, 2015, at 632 Norwest Drive, Norwood, Massachusetts, the residence of co-defendants Soto-Peguero and Cabral. Because Cabral had earlier pled guilty to the charges against her and Soto-Peguero was found guilty in a separate trial, Guzman-Ortiz was the sole defendant in the instant proceeding. In this trial the government presented the testimony of five law enforcement personnel, two agents of the Drug Enforcement Administration ("DEA"), as well as three state and local police officers who were part of an anti-crime task force that worked with the DEA, all hereafter referred to as "agents." The evidence also included photographs, substances found in bags, charts reflecting tests on substances seized, and transcripts of intercepted telephone calls and messages.

The evidence showed that at 1:43 p.m. on that day, Eddyberto Mejia-Ramos, known to the agents as a heroin dealer in Taunton, Massachusetts, spoke by telephone with Soto-Peguero, who was one of his suppliers. Law enforcement agents, who had been conducting a months-long wiretap investigation of Mejia-Ramos, intercepted the call. Soto-Peguero told Mejia-Ramos, "Call me because ... because I have a lot of food .... I have a lot of food around. I got ready for you." Tr. Ex. 1.1. "Food" was a code word for heroin. Mejia-Ramos told Soto-Peguero, "I'll call you ... around three, between three and four I'll call you." Id.

Based on this call, agents established surveillance of the Norwood apartment that afternoon. They observed no activity until around 6:00 p.m., when Cabral left the apartment in a car and apparently went grocery shopping. She returned about an hour later, entered the apartment briefly, and then fetched the groceries from her vehicle,

assisted by defendant and Soto-Peguero. This was the first notice of defendant's presence at the apartment. The agents had not known of, or seen, defendant before that day.[2]

At 8:57 p.m. that evening, after a short exchange of text messages, Mejia-Ramos called Soto-Peguero and said "I'll be ready ... Get here at ten .... Send me something heavy, heavy duty." Tr. Ex. 1.3. "[S]omething heavy" meant a large amount of heroin. Soto-Peguero replied that he would send Cabral, and she left the apartment shortly thereafter. In a 9:38 p.m. phone call, Soto-Peguero informed Mejia-Ramos: "she's around there on her way, the woman. In twenty minutes, half an hour around there." Tr. Ex. 1.4. None of the intercepted communications referred to or were exchanged with defendant, nor was there any evidence of his knowledge thereof.

Agents followed Cabral as she traveled towards Taunton and coordinated a stop of her vehicle. She was arrested after police seized from her purse 918 grams of heroin in the form of seven to ten bricks wrapped in green cellophane. Although forensics later identified latent fingerprints on the bricks matching Soto-Peguero's, no such evidence of defendant's participation was adduced.

Shortly after Cabral's arrest, around 10:00 p.m., agents approached the front and rear entrances of the Norwood apartment to enter and freeze the premises pending issuance of a search warrant. A detective knocked on the front door and yelled loudly

---

[2] Prior to trial the court allowed defendant's motion in limine to exclude from the trial evidence of his July 3, 2015, arrest in connection with a heroin sale. See Docket # 231 at 2. That transaction generated a criminal proceeding in the state court which was ultimately dismissed by that court for violations of defendant's Fourth Amendment rights. This court in its ruling also excluded evidence of Soto-Peguero's use of a firearm during the July 6, 2015, raid. These rulings are not at issue in the present motion.

to announce the presence of the police.  No one answered, but the agents heard movement within the apartment.  As they tried unsuccessfully to breach the front door with a ram, Soto-Peguero and defendant apparently moved upstairs and were observed at the window in the front upstairs bedroom.  The agents then broke the glass sliding door at the back of the apartment, gained entry and opened the front door.  They ordered Soto-Peguero and defendant to come downstairs and arrested them.

The agents found heroin and drug distribution paraphernalia throughout the apartment.  One kilogram of heroin, wrapped entirely in black electrical tape, was partially stuffed in an air vent below the window in the upstairs room where defendant and Soto-Peguero had been observed during the attempted front door entry.  That room was sparsely furnished with only an air mattress (without bedding), the box therefor, some suitcases, and miscellaneous items on the floor.  In a second upstairs bedroom, the agents located 834 grams of heroin inside a black plastic bag, as well as six cell phones and a smaller portion of heroin.  This room also contained a bed, but with bedding , night stands, two bureaus, women's and men's clothing, and pictures of Soto-Peguero and Cabral together.  The evidence suggests that this was Soto-Peguero and Cabral's bedroom.  The evidence is not clear, however, as to defendant's presence in that room at any time.

Downstairs, the apartment comprised a sparsely furnished living room and an open area with a kitchen.  In the kitchen dirty pans were on the stove and the remnants of a fried chicken dinner, on the counter. Two items associated with drug distribution activity were plainly visible: the base of a blender or grinder sitting in the center of the living room floor, and a roll of green cellophane wrapping material similar in appearance

to the material used for wrapping the heroin found on Cabral. Other drug distribution paraphernalia was located behind closed doors or otherwise out of sight: inside a hallway closet, agents found a small bag of heroin, cutting agent, zip lock bags, aluminum mixing bowls with drug residue, a digital scale, and a mold for use in a hydraulic drug press; in a bathroom/laundry area, the drug press itself was found inside a large bag. There was no evidence that the drug distribution paraphernalia had been used on the day in question, or that the heroin seized from Cabral had been prepared and packaged that day, or that defendant was aware of or had participated in such activities.

Defendant moved for judgment of acquittal at the close of the evidence. Though the court maintained the view that "this is a very, very, very thin case," Tr. 2-90, it allowed the jury to render a verdict. After his conviction on the conspiracy count only, defendant renewed his motion. The matter was thereafter briefed by both parties.

## II. Legal Principles

### A. Standard of Review

In deciding a Rule 29 motion the court's task is to determine whether a rational jury could find guilt beyond a reasonable doubt from the evidence presented. See United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995). If the jury could not so find the conviction must be reversed. Fed. R. Crim. P. 29 (court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."). Even "if the evidence, viewed in the light most favorable to the verdict, gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, this court must reverse the conviction," because in such a case "a

reasonable jury must necessarily entertain a reasonable doubt." United States v. Flores–Rivera, 56 F.3d 319, 323 (1st Cir.1995) (internal quotation marks and emphasis omitted).

Nonetheless, the court reviews the evidence in favor of the verdict and assumes that the jury made all reasonable inferences to the benefit of the prosecution and resolved credibility disputes and conflicting evidence in its favor. See United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. 1991). That standard poses "daunting hurdles" for the defendant. United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006). It is "rare" for the court to reverse a conviction under Rule 29. See United States v. López-Díaz, 794 F.3d 106, 108 (1st Cir. 2015).

### B. Elements of the Offense of Conviction

A criminal conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. United States v. Dellosantos, 649 F.3d 109, 115 (1st Cir. 2011). To convict defendant of conspiracy in violation of 21 U.S.C. § 846, the government was required to prove that "(1) a conspiracy existed, (2) the defendant had knowledge of the conspiracy, and (3) the defendant knowingly and voluntarily participated in the conspiracy. Under the third element, the evidence must establish that the defendant both intended to join the conspiracy and intended to effectuate the objects of the conspiracy." Id.[3]

---

[3] The charge to the jury in this case explained conspiracy as requiring proof of two elements: 1) that there was an agreement by two or more persons to accomplish an unlawful purpose, i.e. to distribute heroin, and 2) that the defendant knowingly and wilfully joined in the unlawful plan with an understanding of its unlawful character. However, the explanation of and elaboration on these elements followed the case law as set forth above.

6

Criminal conspiracies are naturally secretive and the government need not prove an express agreement between co-conspirators. United States v. Morillo, 158 F.3d 18, 23 (1st Cir. 1998) ("[t]he agreement itself need not be express, but may consist of no more than a tacit understanding.") (internal punctuation omitted); see Glasser v. United States, 315 U.S. 60, 80 (1942) (tacit agreement to violate law may be demonstrated by a "development and a collocation of circumstances").  However, while the government may prove the charge entirely with circumstantial evidence, "[m]ere presence at the scene of a crime," without more, "is insufficient to prove membership in a conspiracy." United States v. Ocampo, 964 F.2d 80, 82 (1st Cir. 1992).  Similarly, the fact that a defendant "knew what was going on" is, by itself, "not enough to establish intent to conspire."  Id.; see also United States v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008) ("suspicious circumstances are not enough to sustain a conviction for conspiracy, and mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement; likewise, a defendant's mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy.") (internal quotation marks, citations omitted).

### III. Application

Defendant contends that only by "speculatively piling unreasonable inference on top of unsupported inference" could the jury determine that defendant, with the requisite intent, agreed with Soto-Peguero to distribute and possess with intent to distribute heroin.  Docket # 259 at 11.  Absent unallowable conjecture, according to defendant, the evidence only shows that he was "merely present" inside the Norwood apartment

for a few hours on the day in question, and "merely associated with" Soto-Peguero and Cabral that day, although he, "possibly, knew then that Soto-Peguero possessed with intent to distribute heroin." Id.

The government counters that defendant's "strongly suggestive presence at a drug trafficking hub, his evident knowledge of the activity being conducted there, and his concerted action with Soto-Peguero to escape law enforcement and hide evidence, is sufficient to support a conspiracy conviction." Docket # 261 at 8. While it concedes that defendant's presence in the Norwood apartment alone is insufficient grounds for his conviction, the government insists that the jury could permissibly infer the required elements of the conspiracy charged by considering defendant's presence alongside "attendant circumstances probative of guilt." Id. The government points to certain facts and circumstances that, it argues, are sufficient, in combination with defendant's presence and knowledge, to ground the jury's inference of a conspiracy.

First, the government contends that "[t]he defendant's attempt to flee with Soto-Peguero supports the inference that he was an active participant in the drug conspiracy." Docket # 261 at 11. But the evidence showed only that neither Soto-Peguero nor defendant opened the door to the apartment when police knocked and that both ran upstairs as agents were pounding on the front door. That is hardly "flight from the police," and is nothing like the activity described in the cases cited by the government. See United States v. Isler, 429 F.3d 19, 25 (1st Cir. 2005) (evidence of flight supporting inference of guilt included attempt to leave building after police entered and engaging in a "violent struggle" with officers while "attempting to force their way past" police); United States v. Carpenter, 403 F.3d 9, 12 (1st Cir. 2005) (evidence of

8

flight supporting inference of guilt included that defendant "recklessly ... fled a traffic stop, r[a]n from his wrecked vehicle, and engaged the police in a life-threatening foot pursuit across a busy interstate highway"). Likewise, the fact that defendant may have witnessed or assisted Soto-Peguero in hastily hiding one kilogram of heroin in the bedroom air vent is not, without more, probative of his agreement to distribute the drugs. To the extent the jury inferred from this conduct defendant's participation in a conspiracy to distribute heroin, such an inference was unreasonable.

Second, the government asserts that because defendant did not live in the Norwood apartment, and there was "no other apparent explanation for [his] presence in the apartment," the only reasonable inference is that "his visit was for a drug-related purpose." Docket # 261 at 12, 13. This argument does not accord with the evidence available to the jury. There was no direct or circumstantial evidence showing or permitting the inference that defendant visited the apartment for any particular reason or that he, in any way, participated in handling the heroin found on Cabral. Guzman-Ortiz's only drug-related activity occurred in response to the raid by law enforcement. There was, however, evidence of his participation in gathering and moving groceries and later dining with Soto-Peguero and Cabral. Though "the government need not exclude every reasonable hypothesis of innocence in order to sustain the conviction," United States v. Valerio, 48 F.3d 58, 64 (1st Cir. 1995), the evidence adduced in this trial does not permit the jury to find beyond a reasonable doubt that defendant could have been present in the Norwood apartment only, or even primarily, for an unlawful reason.

9

Finally, the government argues that the jury was entitled to infer defendant's guilt from his presence in the Norwood apartment because "it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes." Batista-Polanco, 927 F.2d at 18. In that case the appellant had been present in an apartment "conspicuously strewn with evidence of a large-scale heroin packaging operation." See id. Evidence showed that the heroin was being packaged at a kitchen table surrounded by six seats and that appellant was one of six men arrested in the apartment that day. On defendant's sufficiency challenge, the First Circuit upheld the conviction after ruling that the jury was entitled to rely upon this evidence and their common sense to infer that the defendant was a member of the drug conspiracy.

In this case, as noted earlier, defendant's presence in the apartment is undisputed and the evidence supports a finding that he, at some point, knew illegal drug activity was conducted therein. But the only evidence of his participation in such activity, or his agreement to so participate, was his response, jointly with Soto-Peguero, to the attempted and ultimately successful entry into the apartment by the agents. That evidence provides an insufficient basis for finding or inferring the existence of an agreement between defendant and Soto-Peguero to possess and distribute heroin, and to determine beyond a reasonable doubt that defendant intentionally entered into such a compact with the requisite knowledge and purpose. See Hyson, 721 F.2d at 863 (reversing conviction where "[defendant] may have known what was going on, but there is no evidence that he participated in the conspiracy."). See also United States v. Spinney, 65 F.3d 231, 234 (1st Cir.1995) (court must "reject those evidentiary

interpretations and illations that are unreasonable, insupportable, or overly speculative.").

Moreover, unlike the facts shown in Batista-Polanco, there was, in this case, no evidence that the drug distribution paraphernalia was "conspicuously strewn" about the Norwood apartment. While cellophane wrapping, a blender, and several cell phones were indisputably in plain view, the presence of these items without more is insufficient to allow the jury to infer that heroin processing or packaging occurred in view of defendant or with his participation. The evidence did show that Soto-Peguero spoke with and texted Mejia-Ramos about heroin sales on several occasions during the afternoon and evening of July 6, 2015, but, as noted earlier, there was no testimony that defendant heard or viewed these communications, or had any knowledge thereof. The jury simply had no evidence to support a finding of the existence of the charged conspiracy and it could not reasonably rely upon an "understanding of human behavior" to assume that defendant must have been a participant in that conspiracy. See Valerio, 48 F.3d at 64 (noting that courts are "loath to stack inference upon inference in order to uphold the jury's verdict.").

In sum, no evidence showed defendant's participation or agreement to participate in any drug-related activity except the attempted hiding of a package of heroin in response to the law enforcement raid. That activity, without more, is insufficient to show the charged conspiracy and, given the lack of any evidence of the nature of the parties' relationship, human experience cannot, in this case, support the verdict.

**IV.　Conclusion**

Defendant's motion for judgment of acquittal (Docket # 241) is allowed.

Because the evidence was insufficient to sustain the jury's verdict on Count 6, the verdict on that Count is set aside, and it is ordered that judgment of acquittal be entered on that Count. Because the jury failed to reach a verdict on Count 4, it is further ordered that judgment of acquittal be entered on that Count. See Fed. R. Crim. P. 29(c)(2).

|  |  |
|---|---|
| March 14, 2019 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |